## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LUKE LAMBERTH,** *individually and on behalf of all others similarly situated,* | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **Cause No.** _____ |
| **THE TEXAS A&M UNIVERSITY SYSTEM,** *and* **ELAINE MENDOZA, TIM LEACH, PHIL ADAMS, ROBERT L. ALBRITTON, JAY GRAHAM, MICHAEL A. HERNANDEZ III, BILL MAHOMES, MICHAEL J. PLANK,** *and* **CLIFF THOMAS,** *in their official capacities as members of The Texas A&M University System Board of Regents,* | § § § § § § § § § | |
| *Defendants.* | | |

### PLAINTIFF'S ORIGINAL PETITION

Plaintiff Luke Lamberth ("Plaintiff") brings this action against The Texas A&M University System (the "A&M System") and Elaine Mendoza, Tim Leach, Phil Adams, Robert L. Albritton, Jay Graham, Michael A. Hernandez III, Bill Mahomes, Michael J. Plank, and Cliff Thomas, in their official capacities as members of the Board of Regents of the A&M System (collectively with the A&M System, "Defendants"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

### I.   NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all persons who paid or will pay tuition to attend one of the universities in the A&M System[1] (collectively, the "Universities") for an in-

---

[1]     The 11 universities in the A&M System are: (1) Texas A&M University; (2) Prairie View A&M University; (3) Texas A&M University-Commerce; (4) Tarleton State University; (5) West Texas A&M University;

person, hands-on education for the Spring 2020 semester and any Summer 2020 semester, and had their course work moved to remote online learning. Such persons paid all or part of the tuition for the Spring 2020 semester and Summer 2020 semesters that ranged from approximately $386.83 per credit hour to $1,603.27 per credit hour for an undergraduate student and $506.33 per credit hour to $1,706.15 per credit hour for a graduate student. Tuition includes the payment of mandatory fees (the "Mandatory Fees").

2.      Beginning in March 2020, as a response to the COVID-19 pandemic, the Universities moved to online instruction and ceased or severely limited on-campus services, facilities, and activities. Even though the Universities cancelled in-person classes and failed to provide the in-person services that the Mandatory Fees were intended to cover, the Universities have not refunded to students *any* amount of the tuition or Mandatory Fees.

3.      In short, A&M Students (as defined below) have paid substantial sums to the Universities for a first-rate education and educational experience, with all the appurtenant benefits offered by a first-rate university, but have been provided a materially deficient and insufficient alternative, which alternative constitutes a decrease in value as compared to what was originally contracted for.

4.      In effect, the Universities have unlawfully seized and are in possession of property (funds) of A&M Students in the form of paid tuition and Mandatory Fees.

5.      Plaintiff seeks, individually and on behalf of all other students similarly situated, just compensation for (i) the taking of tuition and Mandatory Fees proportionate to the amount of time that remained in the Spring 2020 semester when the Universities switched to online distance

---

(6) Texas A&M University-Kingsville; (7) Texas A&M University-Corpus Christi; (8) Texas A&M International University; (9) Texas A&M University-Texarkana; (10) Texas A&M University-Central Texas; and (11) Texas A&M University-San Antonio.

learning and stopped providing contracted-for services and (ii) the taking of tuition and Mandatory Fees for the Summer 2020 course offerings, which are being delivered online only.

6.      Plaintiff's counsel has submitted Texas Public Information Act requests to each of the Universities and the Board of Regents of the A&M System (the "Board of Regents") in order to, *inter alia*, gain access to the internal communications regarding issuing potential refunds and reimbursements to students and the ultimate denial of same. If any information received proves relevant, Plaintiff shall amend its pleadings to incorporate.

## II.      PARTIES

7.      Plaintiff Luke Lamberth is an individual who resides at 4737 State Highway 97 E, Floresville, TX 78114-3704.  He paid to attend the Spring 2020 semester at Texas A&M University ("TAMU") as a full-time undergraduate student.

8.      Plaintiff paid tuition and Mandatory Fees for the Spring 2020 semester to enable him to obtain an in-person, on-campus educational experience and to participate in the activities and utilize the services traditionally accessible to students on campus.  He has not been provided just compensation or a pro-rated refund of the tuition or Mandatory Fees for his in-person classes that were discontinued and moved online or the diminution or cessation of educational enrichment experiences associated with his in-person classes and on-campus college experience.

9.      Plaintiff now seeks to represent both himself and a Class (as defined below) of similarly situated students (or their parents/ other benefactors) who paid to attend any of the Universities during the Spring 2020 semester and the Summer 2020 semesters. Mr. Lamberth and the Class he seeks to represent will be referred to herein as "A&M Students."

10. The A&M System is a state agency.[2] Universities that comprise the A&M System enroll more than 153,000 students from across the country.[3] Its principal place of business is located at 301 Tarrow Street, College Station, TX 77840.

11. The A&M System is governed by a Board of Regents. TEX. EDUC. CODE ANN. § 85.11. The Board of Regents is comprised of nine members who are appointed by the Governor of Texas and confirmed by the Texas Senate. *Id.*

12. Defendants Elaine Mendoza, Tim Leach, Phil Adams, Robert L. Albritton, Jay Graham, Michael A. Hernandez III, Bill Mahomes, Michael J. Plank, and Cliff Thomas are being sued in their official capacities as members of the Board of Regents. Upon information and belief, the individual defendants may be served through the general counsel of the A&M System, Ray Bonilla, at 301 Tarrow Street, College Station, TX 77840.

### III.     JURISDICTION AND VENUE

13. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14. This Court has personal jurisdiction over Defendant A&M System because it maintains its principal place of business in the Southern District. This Court has personal jurisdiction over the individual defendants because all members of the Board of Regents are

---

[2]     TEX. GOV'T CODE ANN. § 572.002 (defining "state agency" to include "a university or an institution of higher education as defined by Section 61.003, Education Code"); TEX. EDUC. CODE ANN. § 61.003 (defining "institution of higher education" to include The Texas A&M University System).

[3]     *Total Texas A&M University System Enrollment*, https://www.tamus.edu/system/total-texas-am-university-system-enrollment/ (last visited July 14, 2020).

citizens of the State of Texas. *See* TEX. EDUC. CODE ANN. § 85.12 (providing that each member of the Board of Regents "shall be selected from different portions of the state").

15.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of this action is situated, in the Southern District. Further, Section 85.18 of the Texas Education Code mandates that venue for a suit filed against a member of the Board of Regents in the member's official capacity lies in Brazos County (located in the Southern District) and venue for a suit filed against the A&M System lies in the county in which the system is located (Brazos County).

## IV.     FACTUAL ALLEGATIONS.

16.     Plaintiff and the other members of the Class paid tuition, including Mandatory Fees, to attend the Spring 2020 semester and/or any of the Summer 2020 semesters at the Universities.

17.     The Spring 2020 semester at TAMU began on or around January 13, 2020 and ended on or around May 5, 2020.[4]  The Summer 2020 classes at TAMU began on or about May 26, 2020 and ended on or about August 3, 2020. *Id.*

18.     Tuition and Mandatory Fees at TAMU for the Spring 2020 semester for an undergraduate student ranged from approximately $612.20 per credit hour to $1,603.27 per credit hour, depending on the program of enrollment and student's state of residency.[5]

19.     Tuition and Mandatory Fees at TAMU for the Spring 2020 semester for a graduate student ranged from approximately $662.20 per credit hour to $1,706.15 per credit hour, depending on the program of enrollment and student's state of residency. *Id.*

---

[4]     *University      Academic      Calendar*,      https://registrar.tamu.edu/Catalogs,-Policies-Procedures/Academic-Calendar (last visited July 14, 2020).

[5]     *Texas A&M Tuition Calculator*, https://tuition.tamu.edu/ (last visited July 14, 2020).

20.     Tuition and Mandatory Fees at TAMU for undergraduate students for Summer 2020 are as follows: [6]

| Estimated Cost of Attendance for College Station Undergraduate Students | | | |
|---|---|---|---|
| 2020 - College Station Undergraduate Summer | | | |
| College Expenses | Resident* | Resident at home with Parents* | Non-Resident* |
| Tuition & Fees | $2,321 | $2,321 | $7,674 |
| Loan Fees | 32 | 32 | 32 |
| Housing & Meals | 3,466 | 1,484 | 3,466 |
| Books & Supplies** | 407 | 407 | 407 |
| Travel | 832 | 832 | 1,163 |
| Personal Expenses | 1,249 | 1,249 | 1,249 |
| Total | $8,307 | $6,325 | $13,991 |

*Amounts are based on 6 credit hours per semester at Texas A&M University.
**Includes electronic-books (e-books), access to third-party online homework platforms and other resources.

21.     Tuition and Mandatory Fees at TAMU for graduate students for Summer 2020 are as follows: [7]

| Estimated Cost of Attendance for College Station Graduate Students | | |
|---|---|---|
| 2020 - College Station Graduate Summer | | |
| College Expenses | Resident* | Non-Resident* |
| Tuition & Fees | 1,519 | 2,938 |
| Loan Fees | 82 | 82 |
| Housing & Meals | 4,217 | 4,217 |
| Books & Supplies** | 333 | 333 |
| Travel | 759 | 1,109 |
| Personal Expenses | 1,509 | 1,509 |
| Total | $8,419 | $10,188 |

*Amounts are based on 3 credit hours per semester at Texas A&M University, College Station.
**Includes electronic-books (e-books), access to third-party online homework platforms and other resources.

---

[6]    *Cost     of     Attendance*,     https://financialaid.tamu.edu/Undergraduate/Cost-of-Attendance#0-CollegeStationUndergraduate (last visited July 14, 2020).

[7]    *Cost     of     Attendance*,     https://financialaid.tamu.edu/Graduate/COA#0-CollegeStationGraduateStudents (last visited July 14, 2020).

22.     The Mandatory Fees at TAMU consist of the following: (i) College Advancement Fee; (ii) Cooperative Education Fee; (iii) Distance Education Administration and Teaching Fees; (iv) Field Trip Fees; (v) Health Center; (vi) International Student Services (ISS) Fee; (vii) International Health Insurance; (viii) Laboratory; (ix) Orientation Fees; (x) Program Fees; (xi) Sponsored International Students; (xii) Student Recreation Center; (xiii) Student Center Complex; (xiv) University Advancement Fee; (xv) Musical Activities Facility Performance Fee; and (xvi) Greek Dues Fee.[8]

23.     Plaintiff and/or the members of the Class paid all or part of the applicable tuition and Mandatory Fees for the benefit of on-campus, live, interactive instruction and an on-campus educational experience throughout the entire semester.[9]

**A.     In response to the COVID-19 pandemic, the Universities closed campus, preventing access to their facilities, services, and housing, and cancelled all in-person classes and activities.**

24.     In response to the COVID-19 pandemic, TAMU created a new section for its website to provide updates and answer frequently asked questions.[10]

25.     On March 10, 2020, TAMU announced that after spring break, classes would be suspended from March 16 and resume on March 18, "to allow for planning and logistics to ensure the provision of all university services in the most efficient, effective and safest way."[11]

---

[8]     *Billing Explanations*, https://sbs.tamu.edu/billing-payments/billing-explanations/ (last visited July 14, 2020).

[9]     Tuition and Mandatory Fees vary slightly among universities in the TAMU System but are approximately the same as TAMU.

[10]     *COVID-19 Guidance*, https://www.tamu.edu/coronavirus/index.html (last updated July 10, 2020).

[11]     *Message from the Provost*, https://www.tamu.edu/coronavirus/messages/tamu-classes-resume-on-march-18-faculty-and-staff-as-planned-on-march-16.html (last updated Mar. 10, 2020).

26.     On March 12, 2020, TAMU announced that classes would be cancelled from March 16 through March 20, and that classes resuming on March 23 would be online only. TAMU further announced that meetings and events would be restricted to a maximum of 50 people and that athletics would be cancelled through March 30.[12]

27.     On March 13, 2020, TAMU announced that athletics would be suspended through April 15 and that the library would be closed effective March 14.[13]

28.     On March 17, 2020, TAMU announced that the Spring 2020 graduation ceremonies would be postponed and that final examinations for the Spring 2020 semester would not be taken in person, but instead offered online.[14] TAMU also announced that Family Weekend, a "101-year-old tradition filled with dozens of events scheduled for April," and Aggie Ring Day would also be cancelled. *Id*.

29.     On March 20, 2020, TAMU confirmed that classes would be conducted online from March 23 through May 10, with final examinations conducted online.[15]

30.     On March 21, 2020, TAMU announced it would change the traditional letter grading system to a more lenient Satisfactory/Unsatisfactory (S/U) grading system for all Spring 2020 graduate and undergraduate courses, if chosen by the student.[16]

---

[12]     *Message from the Provost*, https://www.tamu.edu/coronavirus/messages/tamu-classes-canceled-until-march-20.html (Mar. 12, 2020).

[13]     *Message from the Provost*, https://www.tamu.edu/coronavirus/messages/march-13th-update.html (last updated Mar. 13, 2020).

[14]     *Texas A&M Spring Graduation Ceremonies Postponed, Finals Go Online, Family Weekend Canceled*, https://www.tamu.edu/coronavirus/messages/march-13th-update.html (Mar. 17, 2020).

[15]     *Travel, Meeting and Event Updates*, https://www.tamu.edu/coronavirus/messages/march-20-travel-meeting-and-event-updates.html (Mar. 20, 2020).

[16]     *Message from the President & Provost*, https://www.tamu.edu/coronavirus/messages/temporary-changes-to-grading-q-drop-and-withdrawal-deadlines.html (Mar. 21, 2020).

31.     On March 23, 2020, TAMU acknowledged Brazos County's shelter in place orders and encouraged students to return home. The announcement also provided that dining would be take-out only and that medical and essential services and academic affairs support would be provided virtually.[17]

32.     On March 25, 2020, TAMU announced that all academic and support services would be offered virtually to the extent possible. Acknowledging that the remote online program is subpar and not as seamless or effective as in-person lectures, TAMU stated:

> While online classes have gone well so far, please understand that everything will not be perfect. During this unprecedented moment in our nation's history, our faculty and staff have made enormous efforts to continue your education. However, there may still be logistical challenges that arise, and we may need to make changes to enhance your experience.[18]

33.     On March 26, 2020, TAMU announced that all courses in the first summer term, the 10-week summer term, and the May "minimester" would be delivered online only. In tacit acknowledgment that certain fees are not fairly administered when education is provided through remote online formats, TAMU stated that, "[i]n an effort to help students, distance education differential tuition will not be charged for online courses this summer at an individual course level."[19]

---

[17]     *Urgent Housing Guidance*, https://www.tamu.edu/coronavirus/messages/march-23-urgent-housing-guidance.html (updated Mar. 23, 2020).

[18]     *Message from President Young*, https://www.tamu.edu/coronavirus/messages/march-25-welcome-back-to-classes-this-week.html (Mar. 25, 2020).

[19]     *Plans for Summer 2020 Course Offerings*, https://www.tamu.edu/coronavirus/messages/plans-for-summer-2020-course-offerings.html (Mar. 26, 2020).

34.     On April 3, 2020, TAMU announced that all courses in the first, second, and 10-week summer terms (including the May "minimester") would be delivered online only.[20]

35.     TAMU has not held any in-person classes since March 6, 2020, just before the commencement of its spring break. Classes that have continued since March 6, 2020 have been offered in a remote online format only, with no in-person instruction or interaction.  Further, many organizations, clubs, and other enrichment activities were substantially diminished or cancelled in this same time period.

36.     TAMU has also unilaterally reduced the amount of education that its students paid tuition for by entirely cancelling classes the week after spring break.

37.     Based on information and belief, under the guidance and policies of the Board of Regents, each of the Universities responded to COVID-19 in a significantly similar manner.

**B.     The Universities' online courses are subpar to in-person instruction, which A&M Students contracted with the Universities to receive by paying tuition.**

38.     Students attending the Universities, such as Plaintiff and the other Class members chose to enroll in the Universities' in-person educational programs—not an online degree program.

39.     On its website, TAMU markets its on-campus experience as a benefit of enrollment:



*STUDENT LIFE*

When you join the Aggie Family, you're instantly part of a community unlike any other — and life in Aggieland is an exciting part of your Texas A&M experience.[21]

---

[20]     *Message from the Provost*, https://www.tamu.edu/coronavirus/messages/april-3-online-delivery-for-summer-courses.html (Apr. 3, 2020).

[21]     *Student Life*, https://www.tamu.edu/student-life/index.html (last visited July 14, 2020).

## STUDENT CLUBS & ORGANIZATIONS

No matter what your interest — whether it's academic, recreational, or social — you can probably find others in Aggieland that share your passion.

- Corps of Cadets
- Student Government
- Fraternity & Sorority Life
- Music Activities

**SEARCH ALL STUDENT ORGANIZATIONS**

**1,000+**
*STUDENT ORGANIZATIONS*

22

## CAMPUS ATTRACTIONS

Texas A&M is home to the George Bush Presidential Library and Museum in addition to several other museums and art galleries. More than 1,200 public events are hosted through our university each year, including Broadway shows, concerts, ceremonies, and athletic events.

23

40.    Similarly, the other Universities in the A&M System market their on-campus experiences as a benefit of enrollment:

***Prairie View A&M University***:

## Campus Life

Prairie View A&M students are able to serve in the Student Government Association, participate in intramural sports, volunteer in the local community and participate in more than 90 student organizations related to their academic major or other interests.

At PVAMU, we know that an education is balanced between what takes place inside and outside of the classroom.

24

---

22    *Student Clubs & Organizations*, https://www.tamu.edu/student-life/index.html#clubs-organizations-recreation (last visited July 14, 2020).

23    *Campus Attractions*, https://www.tamu.edu/about/attractions/index.html (last visited July 14, 2020).

24    *Campus Life*, https://www.pvamu.edu/campus-life/ (last visited July 14, 2020).

11

***Texas A&M University-Texarkana***:

# Campus Life

Your college experience is not only about textbooks and classes, but making friends, joining clubs and organizations, and getting involved.  There is never a dull day when you are an Eagle!  The Campus Activities Board is always planning a fun event or concert to engage all students, so if your focus is to pledge a Greek organization, attend a poetry slam contest, attend a sporting event, or just make life-long friends, A&M-Texarkana is your place for an exciting campus life!

The culture at A&M-Texarkana is one of community, and you will feel that community spirit the day you step on campus.  If you live on campus, you will receive the royal treatment [25]

***Texas A&M University-Commerce***:

Get ready for an amazing experience at Texas A&M University-Commerce!  We believe learning isn't just limited to the classroom, visit our campus to get a true feel for the university experience! [26]

41.     The online learning options being offered by the Universities are subpar in practically every aspect as compared to the educational experience provided to Plaintiff and the members of the Class before the COVID-19 pandemic.  During the online portion of the semesters, the Universities offered some classes through Zoom. Other classes, however, stopped providing any lectures whatsoever and only provided reading and homework assignments for the students to

---

[25]     *Campus Life*, https://www.tamut.edu/Campus-Life/index.html (last visited July 14, 2020).

[26]     *Campus           Life           &           Student           Success*, http://www.tamuc.edu/CampusLife/?loc=topMenu&_ga=2.36830240.1213176153.1594389341-2046328868.1594389341 (last visited July 14, 2020).

self-learn. Therefore, there was a lack of classroom interaction among teachers and students and among students, which is instrumental in interpersonal skill development.

42.    Further, many student organizations, events, clubs, and athletics—an essential element of the on-campus academic experience offered by the Universities—were substantially curtailed, cancelled, or effectively cancelled as a result of campus closures.

43.    The online formats being used by the Universities do not require memorization or the development of strong study skills, given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Satisfactory/Unsatisfactory grade rather than a letter grade, and the lack of mandatory attendance, provides educational leniency that the students would not otherwise have with in-person classes and the letter-grading system that students paid for and expected.

44.    Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  Students have also been deprived of the opportunity to participate in student organizations, clubs, and recreational activities that are typically offered to students on campus.

45.    Access to facilities such as libraries, laboratories, computer labs, gymnasiums, and study rooms are also integral to a college education. And access to the myriad activities offered by campus life fosters social development, independence, and networking for future careers—all substantial and materials parts of the basis upon which the Universities can charge the tuition and Mandatory Fees.

46.    The Universities have not made any refund of any portion of the tuition of Mandatory Fees that A&M Students paid for the Spring 2020 semester or Summer 2020 semesters for the period it moved to subpar online distance learning.

47.     Defendants are obligated to uphold the Texas and United States Constitutions. By denying A&M Students in-person learning and on-campus benefits and opportunities, Defendants have violated the Article I, §§ 17 and 19 of the Texas Constitution and the Fifth and Fourteenth Amendments of the U.S. Constitution. A&M Students are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of the Universities' COVID-19-related closures for the in-person education and on-campus services and opportunities that A&M Students have been denied.

## V.     CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All students who paid, or other persons who paid on a student's behalf, tuition and mandatory fees to any of the eleven universities that comprise The Texas A&M University System in order for the student to attend in-person class(es) during the Spring 2020 semester and any of the Summer 2020 semesters at the Universities, but which class(es) were delivered online (in whole or in part).

49.     Excluded from the Class are the A&M System, its subsidiaries and affiliates, any entity in which the A&M System may exert its control over, and the A&M System's officers, directors, legal representatives, successors, and assigns.

50.     Also excluded from the Class are Defendants Elaine Mendoza, Tim Leach, Phil Adams, Robert L. Albritton, Jay Graham, Michael A. Hernandez III, Bill Mahomes, Michael J. Plank, and Cliff Thomas, members of their immediate families and their legal representatives, heirs, successors, and assigns.

51.     Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate families and members of their judicial staff.

52.     Plaintiff reserves the right to modify or amend the definition of the proposed Class, including by proposing subclasses, based upon discovery and further investigation.

53.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

54.     **Rule 23(a)(1)–Numerosity**. The requirements of Rule 23(a)(1) have been met, because the Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the Universities have collectively reported that 150,645 students were enrolled in Fall 2020.[27] The number of students enrolled in the Summer 2020 semesters is unknown to Plaintiff. The identity of all such students is known to the Universities and can be identified through the Universities' records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

55.     **Rule 23(a)(2)—Commonality.** The requirements of Rule 23(a)(2) have been met. There are questions of law and fact common to the members of the Class including, without limitation:

a.      Whether the Universities accepted the payment of tuition and Mandatory Fees from Plaintiff and other members of the Class in exchange for the promise to provide an in-person, on-campus education and access to certain on-campus facilities, organizations, and services throughout the semester;

b.      Whether Defendants complied with constitutional requirements for seizing and retaining Plaintiff's and other Class members' property without providing the services that the tuition and Mandatory Fees were intended to cover;

c.      Whether Defendants afforded Plaintiff and the other Class members notice and due process before seizing and retaining their property; and

d.      The amount of damages and other relief to be awarded to Plaintiff and the other Class members.

---

[27]      *Total Texas A&M University System Enrollment*, https://www.tamus.edu/system/total-texas-am-university-system-enrollment/ (last visited July 14, 2020).

56.     **Rule 23(a)(3)—Typicality.** The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the members of the Class, because Plaintiff and the other Class members each paid tuition and Mandatory Fees associated with the Spring 2020 semester and any of the Summer 2020 semesters at the Universities but were not provided the education and services that those costs were meant to cover. Each suffered damages in the form of their lost tuition and Mandatory Fees paid to the Universities, and the claims all arise from Defendants' practices and course of conduct.

57.     **Rule 23(a)(4)—Adequacy.** The requirements of Rule 23(a)(4) have been met. Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other Class members who he seeks to represent, Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

58.     **Rule 23(b)(3)—Predominance and Superiority.** Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.   Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to

all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## VI.   <u>FIRST CLAIM FOR RELIEF</u>

**VIOLATION OF THE TAKINGS CLAUSE—42 U.S.C. § 1983**
**(On Behalf of Plaintiff and the Class)**

59.     Plaintiff repeats and re-alleges paragraphs 1-58 above, as if fully alleged herein.

60.     Plaintiff brings this claim individually and on behalf of the members of the Class.

61.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. AMEND. V. The takings clause is made applicable to the states through the Fourteenth Amendment. *See* U.S. CONST. AMEND XIV; *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897)). Similarly, Article I, § 17 of the Texas Constitution provides that private property shall not be taken or applied "for public use without adequate compensation being made." TEX. CONST. ART. I, § 17. Thus, the Takings Clause of the U.S. and Texas constitutions prohibits states, and state agencies like the A&M System, from taking private property for public use without just compensation.

62.     Takings claims may properly be brought against state agencies (such as the A&M System) and against persons in their official capacities (such as the individual defendants) and are not barred by sovereign immunity. *McCullough v. Johnson*, 7:05-CV-058R, 2007 WL 3406753, at *6 (N.D. Tex. Nov. 14, 2007); *Gen. Services Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001) (holding that sovereign immunity "does not shield the State from an action for compensation under the takings clause" of the Texas Constitution); *T. O. F. C., Inc. v.*

*U. S.*, 683 F.2d 389, 393 (Ct. Cl. 1982) (holding that "the fifth amendment is an express waiver of sovereign immunity").

63.     Common law has recognized that there is a property right by an owner in funds held in an account managed by another. *See, e.g., Wisconsin Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 77, 328 Wis. 2d 469, 507, 787 N.W.2d 22, 41 (holding that health care providers have a protected property interest in the Injured Patients and Families Compensation Fund, for which they are assessed mandatory fees and receive a "paid-for benefit" in the form of a license to practice medicine in Wisconsin). The Fifth Circuit has held that "a public entity could hold private funds" and that a court "must look both to the nature of the organization holding the funds and to the nature of the funds claimed by the State to determine whether the funds are private or public property." *Mississippi Surplus Lines Ass'n v. Mississippi*, 261 Fed. Appx. 781, 785 (5th Cir. 2008). Here, the Universities receive payments of tuition and Mandatory Fees from private citizens, as consideration for the benefit of receiving in-person course instruction and other on-campus benefits—the funds are thus private in nature but held by a public entity. Plaintiff and the other members of the Class have a protected property right in all sums they paid to the Universities.

64.     Defendants violated the Takings Clause by failing to return to Plaintiff and the other members of the Class that portion of the tuition and Mandatory Fees for which they received nothing, or significantly less, than what they bargained for in return. Neither Plaintiff nor the other Class members have made a knowing and voluntary waiver of their constitutional right under the Fifth Amendment to be paid just compensation for the taking of their property right in those funds.

65.     Thus, A&M Students are entitled to just and reasonable compensation for the taking of their property.

## VII.    SECOND CLAIM FOR RELIEF

### DUE PROCESS—42 U.S.C. § 1983
### (On Behalf of Plaintiff and the Class)

66.    Plaintiff repeats and re-alleges paragraphs 1-58 above, as if fully alleged herein.

67.    Plaintiff brings this claim individually and on behalf of the members of the Class.

68.    Government actors must provide adequate due process procedures when depriving citizens of protected property interests. U.S. CONST. AMEND. XIV; 1 TEX. CONST. ART. I, § 19.

69.    The due process clauses of the U.S. and Texas constitutions prohibits the State of Texas and the governmental agencies that it forms, such as the A&M System, from depriving citizens of a protected property interest without due process of law.

70.    Plaintiff and the Class members had a constitutionally protected property interest in the tuition and Mandatory Fees they paid for in-person education and on-campus services and opportunities but were denied due to the COVID-19 pandemic.

71.    Defendants took action affecting Plaintiff and the other Class members' constitutionally protected property interest by retaining amounts from Plaintiff's and the other Class members' payment of tuition and Mandatory Fees.

72.    Defendants deprived Plaintiff and the other Class members of their protected property interests without due process of law by, for example:

a.    Failing to provide timely notice to Plaintiff and the other members of the Class, whose identity and contact information Defendants either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition and Mandatory Fees;

b.    Failing to design and implement criteria by which the tuition and Mandatory Fees can be refunded to Plaintiff and the other members of the Class in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic; and

c.   Failing to design and implement a mechanism by which Plaintiff and the other members of the Class can obtain a refund of the tuition in light of the action by the Universities to cease or severely limit all on-campus, in-person classes and activities due to the COVID-19 pandemic.

73.   Defendant's failure to comply with the requirements of due process has resulted in substantial detriment to the Plaintiff and the Class.

## VIII.   JURY DEMAND

74.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Luke Lamberth demands a trial by jury of any and all issues in this action so triable of right.

## IX.   ATTORNEYS' FEES

75.   Plaintiff Luke Lamberth, individually and on behalf of all similarly situated students, seeks attorneys' fees as permitted by law.  FED. R. CIV. P. § 9(g), 54(d)(2).

## X.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luke Lamberth, individually and on behalf of the Class, respectfully requests that the Court:

(a)   Enter an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Mr. Lamberth as representative of the Class, and appointing Plaintiff's attorneys as Class counsel;

(b)   Enter judgment in favor of Plaintiff and the Class on all counts asserted herein, awarding just compensation in an amount to be determined by the trier of fact, including but not limited to restitution and all other forms of equitable monetary relief;

(c)   Award Plaintiff and the Class reasonable attorneys' fees, costs, and expenses;

(d)   Award pre- and post-judgment interest on any amounts awarded; and

(e)   Award Plaintiff and the Class such other and further relief as they may justly be entitled.

Dated: July 23, 2020                    Respectfully submitted,

                                        *s/ Gary F. Lynch*
                                        _____

                                        **CARLSON LYNCH LLP**
                                        Gary F. Lynch* (Attorney-in-charge)
                                        Edward W. Ciolko*
                                        1133 Penn Avenue
                                        5th Floor
                                        Pittsburgh, PA 15222
                                        P. (412) 322-9243
                                        F. (412) 231-0246
                                        E. glynch@carlsonlynch.com
                                           eciolko@carlsonlynch.com

                                        **COBB & COUNSEL PLLC**
                                        Bill Cobb
                                        Texas State Bar No. 00796372
                                        Ann Stehling
                                        Texas State Bar No. 24110404
                                        100 Congress Avenue, Suite 2000
                                        Austin, Texas 78701
                                        P. (512) 693-7570
                                        F. (512) 233-2767
                                        E. bill@cobbxcounsel.com
                                           ann@cobbxcounsel.com

                                        *\*pro hac vice forthcoming*

                                        ***Counsel for Plaintiff***